IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: BOSTON SCIENTIFIC CORP.,
PELVIC REPAIR SYSTEM
PRODUCTS LIABILITY LITIGATION

MDL No. 2326

---------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

*Anne Stidham & Mike Stidham v. Boston Scientific Corp.*       No. 2:12-cv-06759

**MEMORANDUM OPINION AND ORDER**
(*Defendant's Motion for Partial Summary Judgment*)

Pending before the court is the defendant's Motion for Partial Summary Judgment on Plaintiffs Anne and Mike Stidham's Punitive Damages Claim ("Motion") [Docket 49]. For the reasons set forth below, the Motion is **DENIED**.

**I.     Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the Boston Scientific Corp. ("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs

and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. The Stidhams' case was selected as a Wave 2 case by the plaintiffs.

Ms. Stidham was surgically implanted with the Uphold Vaginal Support System (the "Uphold") and the Solyx SIS System (the "Solyx") to treat her POP and SUI on December 20, 2010. (*See* BSC's Mot. for Summ. J. & Mem. of Law in Supp. ("Mem. in Supp.") [Docket 49], at 7). She received her surgery at a hospital in Towson, Maryland. (*Id.*). Ms. Stidham claims that as a result of implantation of the Uphold and the Solyx, she has experienced multiple complications, including pain, mesh extrusion, recurrence of prolapse, dyspareunia, neuromuscular problems, and vaginal scarring. (*See* Second Am. Pl. Fact Sheet [Docket 60-3], at 6). She brings the following claims against BSC: negligence; strict liability for design defect, manufacturing defect, and failure to warn; breaches of express and implied warranties; and punitive damages. (Short Form Compl. [Docket 1], at 4–5). Mr. Stidham brings a claim for loss of consortium. (*Id.*). In the instant motion, BSC moves for summary judgment on the grounds that the plaintiffs' claim for punitive damages is "without evidentiary or legal support." (Mem. in Supp. [Docket 49], at 1).

## II. Legal Standards

### A. Summary Judgment

A partial summary judgment "is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case." Fed. R. Civ. P. 56 advisory committee's note. A

motion for partial summary judgment is governed by the same standard applied to consideration of a full motion for summary judgment. *See Pettengill v. United States*, 867 F. Supp. 380, 381 (E.D. Va. 1994) (citing *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592. 595 (4th Cir. 1985)). To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL

cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion based on the statute of limitations, I generally refer to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). However, if a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as the Stidhams did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Stidham received the Uphold and Solyx implantation surgery in Maryland. Thus, the choice-of-law principles of Maryland guide this court's choice-of-law analysis.

### III.     Analysis

The question before the court is whether the plaintiffs have produced enough evidence to

4

create a genuine dispute of material fact as to whether BSC engaged in culpable conduct that meets the punitive damages standard. To resolve the issue, I must first determine which state's law applies. As discussed above, Maryland choice-of-law principles apply generally to this case. In tort actions, Maryland "adheres to the *lex loci delicti* rule in analyzing choice of law problems." *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000). Under this rule, a court must apply "the law of the state in which the alleged tort took place," *id.*, or, said differently, "the place where the last event required to give rise to the tort occurred." *Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 844 (Md. 2006). Federal courts have expounded on this view, finding that under Maryland's choice-of-law jurisprudence, "the law of the place of injury applies," which "is the place where the injury was suffered, not where the wrongful act took place." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986) (internal citation omitted). Here, the implantation surgery that allegedly resulted in Ms. Stidham's injuries took place in Maryland.

BSC argues that the law of Massachusetts—the place where the alleged misconduct occurred—should apply instead of the law of Maryland. (*See* Mem. in Supp. [Docket 49], at 11–12). BSC maintains that the focus of the punitive damages inquiry in this case is corporate conduct and that such alleged conduct took place, if at all, in Massachusetts where BSC's principal place of business is located and corporate decisions are centered. (*Id.* at 12). BSC also notes that the Uphold and the Solyx slings were designed and labeled in Massachusetts. (*Id.*). Accordingly, BSC takes the position that Massachusetts law applies to the plaintiffs' punitive damages claim. (*Id.*). BSC points to this court's ruling in *In re Ethicon*—where I held that the focus of the punitive damages inquiry was Ethicon's corporate conduct, and because that conduct allegedly occurred in New Jersey, New Jersey law applied—for support. *In re Ethicon, Inc.,*

5

*Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-cv-4301, 2014 WL 186869, at *10 (S.D. W. Va. Jan. 15, 2014), *rev'd on other grounds*, No. 2:12-cv-4301, 2014 WL 457551 (S.D. W. Va. Feb. 3, 2014). BSC also points to other product liability cases where courts have applied an alternative state's punitive damages law based on where the corporate conduct occurred. *See Aguirre Cruz v. Ford Motor Co.*, 435 F. Supp. 2d 701, 706 (W.D. Tenn. 2006) (applying Michigan law for punitive damages where the corporate decisions, design of the product, and principal place of business all occurred in Michigan); *Zimmerman v. Novartis Pharmaceuticals Corp.*, 889 F. Supp. 2d 757, 760 (D. Md. 2012) (applying Tennessee's "significant relationship" approach to hold that New Jersey punitive damages law—where the conduct occurred—applied); and *Tobin v. AMR Corp.*, 637 F. Supp. 2d 406, 422 (N.D. Tex. 2009) (applying Texas law for punitive damages where injury occurred in Illinois but the defendants' corporate decisions were made in Texas).

 BSC's analysis is flawed. The cases it cites are inapposite because they all use the "most significant relationship" test. In *In re Ethicon, Inc.*, this court applied Texas choice-of-law rules. 2014 WL 186869, at *2–3. Under Texas law, courts apply the "most significant relationship" test as enunciated by the Restatement (Second) of Conflicts (the "Restatement") to each substantive issue. *Id.* at *9. *Tobin* also applied the Restatement approach under Texas law. 637 F. Supp. 2d at 412. Similarly, *Aguirre Cruz* and *Zimmerman* applied Tennessee's choice-of-law rules, where Tennessee also employs the Restatement's "most significant relationship" approach. *See Aguirre Cruz*, 435 F. Supp. 2d at 704; *Zimmerman*, 889 F. Supp. 2d at 760. BSC cites to no authority where a Maryland court—state or federal—has ever construed *lex loci delicti* to be the place where the defendant engaged in wrongful conduct. Instead, Maryland's choice-of-law principles provide that "the law of the place of injury applies." *Johnson*, 785 F.2d at 511. The Fourth

Circuit has explicitly defined the place of injury under Maryland law as "the place where the injury was suffered, not where the wrongful act took place." *Id.* Ms. Stidham's alleged injuries were suffered in Maryland, not Massachusetts. Because plaintiffs' alleged injuries were sustained in Maryland, I **FIND** that the laws of Maryland apply to the plaintiffs' punitive damages claim.

I now consider the substantive law. Maryland courts permit an award of punitive damages in products liability cases when the plaintiff can prove "actual malice," that is, that (1) the defendant had actual knowledge of a defect, and (2) the defendant consciously or deliberately disregarded the foreseeable harm resulting from that defect. *Owens-Ill., Inc. v. Zenobia*, 601 A.2d 633, 653 (Md. 1992). The Maryland Court of Appeals requires more than mere constructive knowledge, the plaintiff "must show that the defendant actually knew of the defect and of the danger of the product at the time the product left the defendant's possession or control." *Id.* at 653–54. Furthermore, "negligence alone, no matter how gross, wanton, or outrageous," will not satisfy the "conscious or deliberate disregard" standard. *Id.* "Instead the test requires a bad faith decision by the defendant to market a product, knowing of the defect and danger, in conscious or deliberate disregard of the threat to the safety of the consumer." *Id.* A plaintiff's entitlement to punitive damages must be established by clear and convincing evidence. *Id.* at 657; *Garcia v. Foulger Pratt*, 845 A.2d 16 (Md. 2003).

BSC argues that plaintiffs present no evidence of "malice" or "criminal indifference." (Mem. in Supp. [Docket 49], at 14). To support its position, BSC points to its submission of the Uphold and the Solyx to the FDA prior to marketing the product, and the fact that the FDA cleared the products "with full knowledge of [their] potential benefits and risks." (*Id.*). BSC also notes that "[m]esh systems like these remain the worldwide standard of care for treatment like

7

that undergone by Plaintiff." (*Id.*). In conclusion, BSC states that "[p]laintiffs cannot support an inference that [BSC's] actions warrant punitive damages," and therefore, BSC is entitled to judgment as a matter of law on the issue of punitive damages.

In response, the plaintiffs argue that BSC was aware that the polypropylene used to construct the Uphold and the Solyx was not intended to be implanted in the human body. (Pls.' Resp. in Opp'n to BSC's Mot. for Summ. J. & Mem. of Law in Supp. ("Response") [Docket 61], at 14). The Uphold and the Solyx are constructed using a polypropylene resin supplied by Chevron Phillips Chemical Company, LP. (MSDS [Docket 62-7], at 1). As evidence, the plaintiffs point to a material safety data sheet ("MSDS") authored by Chevron Phillips, which included the following warning:

> MEDICAL APPLICATION CAUTION: Do not use this Chevron Phillips Chemical Company LP material in medical applications involving permanent implantation in the human body or permanent contact with internal body fluids or tissues.

(*Id.*). Despite this warning, BSC used Chevron Phillips polypropylene in the Uphold and the Solyx devices.

Additionally, the plaintiffs argue that BSC knew it needed to conduct long-term safety studies of the polypropylene material in the Uphold and Solyx devices. (Resp. [Docket 61], at 14). The plaintiffs point to the written agreement between BSC and Chevron Phillips (the "Agreement") as evidence of BSC's knowledge. (*Id.*). The Agreement cautioned BSC to make its own determination of the safety and suitability of the polypropylene material in BSC's products. The agreement stated:

> BEFORE USING ANY PSPC POLYPROPYLENE PRODUCT, BOSTON SCIENTIFIC IS ADVISED AND CAUTIONED TO MAKE ITS OWN DETERMINATION AND ASSESSMENT OF THE SAFETY AND SUITABILITY OF THE PSPC POLYPROPYLENE PRODUCT FOR USE BY, FOR OR ON BEHALF OF BOSTON SCIENTIFIC. IT IS THE ULTIMATE

>   RESPONSIBILITY OF BOSTON SCIENTIFIC TO ENSURE THAT THE PSPC POLYPROPYLENE PRODUCT IS SUITED TO BOSTON SCIENTIFIC'S SPECIFIC APPLICATION.

(Chevron Agreement [Docket 49-1], at 68). Despite the MSDS warning and the admonition from BSC's polypropylene supplier to conduct its own tests, an internal BSC document indicated that BSC sponsored no clinical studies on either the Uphold or the Solyx devices. (Connor Dep. [Docket 62-11], at 210:15–211:3). Furthermore, BSC never warned through its Directions for Use that the Uphold and the Solyx were made of a component that was not safe for permanent implantation in the human body. (*See* Uphold DFU [Docket 62-1]; Solyx DFU [Docket 62-26]).

In light of the MSDS warning, a reasonable jury could find that BSC "actually knew of the defect and of the danger of the product at the time the product left the defendant's possession or control." *Owens-Ill.*, 601 A.2d at 653–54. Moreover, a reasonable jury could also find that by failing to conduct clinical testing, BSC operated with "conscious or deliberate disregard" of the threat to consumer safety, making a "bad faith decision" to market the Uphold and the Solyx despite "knowing of the defect and danger." *Id.* Therefore, I **FIND** that there is a genuine dispute of material fact as to whether BSC's actions with respect to the Uphold and the Solyx were malicious under Maryland law and warrant an award of punitive damages. Accordingly, BSC's Motion for Partial Summary Judgment on Plaintiffs' Punitive Damages Claim is **DENIED**.

## IV. Conclusion

For the reasons stated above, BSC's Motion [Docket 49] is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 7, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE