IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION


ANNE STIDHAM and MIKE STIDHAM,

    Plaintiffs,

v.                 Civil Action No. 2:12-cv-06759

BOSTON SCIENTIFIC CORP.,

    Defendant.


MEMORANDUM OPINION AND ORDER
*(Defendant's Motion for Summary Judgment)*

  Pending before the court is Boston Scientific Corp.'s ("BSC") Motion for Summary Judgment Against Plaintiffs Anne and Mike Stidham ("Motion") [Docket 48]. As set forth below, BSC's Motion is **GRANTED IN PART** with respect to the plaintiffs' claims of strict liability for manufacturing defect, negligent manufacturing, breach of implied warranty of fitness for a particular purpose, and fraudulent concealment. BSC's Motion is **DENIED IN PART** with respect to the plaintiffs' claims of strict liability for design defect, strict liability for failure to warn, negligent design, negligent failure to warn, breach of express warranty, breach of implied warranty of merchantability, and loss of consortium.

**I.  Background**

  This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 72,000 cases currently pending, approximately 16,000 of which are in the Boston Scientific Corp.

MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions and summary judgment motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. The Stidhams' case was selected as a Wave 2 case by the plaintiffs.

Ms. Stidham was surgically implanted with the Uphold Vaginal Support System (the "Uphold") and the Solyx SIS System (the "Solyx") on December 20, 2010. (Short Form Compl. [Docket 1] ¶¶ 8, 10). She received the surgery at a hospital in Towson, Maryland. (*Id.* ¶ 11). Her implanting surgeon was Dr. Adelmo Marana. (*Id.* ¶ 12). Ms. Stidham claims that as a result of implantation of the Uphold and the Solyx, she has experienced multiple complications, including pain, mesh extrusion, recurrence of prolapse, dyspareunia, neuromuscular problems, and vaginal scarring. (Second Am. Pl. Fact Sheet [Docket 60-3], at 6). She brings the following claims against BSC: strict liability for manufacturing defect, design defect, and failure to warn; negligence; breaches of express and implied warranties; and punitive damages. (Short Form Compl. [Docket 1] ¶ 13). Mr. Stidham brings a claim for loss of consortium. (*Id.*).

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

**B.     Choice of Law**

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion,

3

I generally refer to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010).

If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, however, as the Stidhams did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Stidham received the Uphold and the Solyx implantation surgery in Maryland. Thus, the choice-of-law principles of Maryland guide this court's choice-of-law analysis.

These principles compel application of Maryland law to the plaintiffs' claims. In tort actions, Maryland "adheres to the *lex loci delicti* rule in analyzing choice of law problems." *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000). Under this rule, a court must apply "the law of the state in which the alleged tort took place," *id.*, or, said differently, "the place where the last event required to give rise to the tort occurred," *Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 844 (Md. 2006). Federal courts have expounded on this view, finding that under Maryland's choice-of-law jurisprudence, "the law of the place of injury applies," which "is the place where the injury

4

was suffered, not where the wrongful act took place." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986) (internal citation omitted). Here, the implantation surgery that allegedly resulted in Ms. Stidham's injuries took place in Maryland. (*See* Short Form Compl. [Docket 1] ¶¶ 11, 13). Thus, I apply Maryland's substantive law to this case.

### III. Analysis

#### A. Strict Liability

Maryland has adopted the doctrine of strict liability under section 402A of the Restatement (Second) of Torts ("Restatement"). *See Phipps v. Gen. Motors Corp.*, 363 A.2d 955, 963 (Md. 1976). Section 402A provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>   (a) the seller is engaged in the business of selling such a product, and
>   (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
>   (a) the seller has exercised all possible care in the preparation and sale of his product, and
>   (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement § 402A.

To prevail on a strict liability claim, the plaintiff must establish that (1) the product was in a defective condition at the time that it left the possession or control of the seller, (2) the product was unreasonably dangerous to the user or consumer, (3) the defect was a cause of the injuries, and (4) the product was expected to and did reach the consumer without substantial change in its condition. *Phipps*, 363 A.2d at 958. For purposes of strict products liability, a product may be defective in one of three ways: (1) a flaw exists in the product at the time the defendant sold it, making the product more dangerous than was intended, (2) a producer of a product fails to warn

5

adequately of a risk or hazard related to the way a product was designed, or (3) a product is defectively designed. *Simpson v. Standard Container Co.*, 527 A.2d 1337, 1339–40 (Md. Ct. Spec. App. 1987).

### 1. Manufacturing Defect

The plaintiffs "do not intend to pursue an independent cause of action for strict liability based on 'manufacturing defect.'" (Pls.' Resp. in Opp'n to BSC's Mot. for Summ. J. ("Resp.") [Docket 60], at 7). Therefore, BSC's Motion on the plaintiffs' claim of strict liability for manufacturing defect is **GRANTED**.

### 2. Design Defect

To recover for design defect, "the plaintiff must prove that the product was in a defective condition *and* unreasonably dangerous at the time the product was sold." *Ziegler v. Kawasaki Heavy Indus., Ltd.*, 539 A.2d 701, 704 (Md. Ct. Spec. App. 1988) (emphasis in original). The critical question in a design defect claim is "whether a manufacturer, knowing of the risks inherent in his product, acted reasonably in putting it on the market." *Id.* at 705 (quoting *Singleton v. Int'l Harvester Co.*, 685 F.2d 112, 115 (4th Cir. 1981)). This question "depends on 'the balancing of the utility of the design and other factors against the magnitude of that risk.'" *Id.* (quoting *Phipps*, 363 A.2d at 961). If the utility of the design outweighs the risks, then the product is not unreasonably dangerous. *See id.* Alternatively, if a product is unavoidably unsafe, then it is not unreasonably dangerous. *Doe v. Miles Labs., Inc., Cutter Labs. Div.*, 927 F.2d 187, 190 (4th Cir. 1991).

Comment k of section 402A of the Restatement describes certain products as "unavoidably unsafe products." Courts have universally interpreted this term to encompass prescription pharmaceuticals, whether categorically or for particular prescription pharmaceuticals, and the vast majority of courts that have considered the issue have found that the category of "unavoidably

unsafe products" can also apply to prescription medical devices. I see no persuasive reason why comment k should not be capable of applying to mesh devices such as the Uphold and the Solyx.

Courts have varied in their treatment of comment k. Some courts have found that comment k categorically bars design defect for certain medical products. *See, e.g.*, *Brown v. Superior Court*, 751 P.2d 470, 477 (Cal. 1988) (leading case adopting categorical approach). Thus, in these states, comment k is an absolute bar to claims of design defect for particular classes of products. Other courts have adopted a case-by-case approach. *See, e.g.*, *Toner v. Lederle Labs., a Div. of Am. Cyanamid Co.*, 732 P.2d 297, 308 (Idaho 1987) (leading extant case adopting case-by-case approach). Thus, in these states, whether comment k bars a claim of design defect depends on the particular product at hand.

Maryland follows the case-by-case approach. The application of comment k is a mixed question of law and fact. *Kearl v. Lederle Labs.*, 218 Cal. Rptr. 453, 463 (Ct. App. 1985), *disapproved of on other grounds by Brown v. Superior Court*, 751 P.2d 470 (Cal. 1988). Determining whether comment k applies "require[s] a full evidentiary hearing." *Toner*, 732 P.2d at 308; *see Lundgren v. Ferno-Washington Co.*, 565 A.2d 335, 338 (Md. Ct. Spec. App. 1989). A matter that requires a full evidentiary hearing cannot be resolved at the summary judgment stage. Therefore, BSC's Motion on the plaintiffs' claim of strict liability for design defect is **DENIED**.

### 3. Failure to Warn

Maryland courts recognize the learned intermediary doctrine. *See Nolan v. Dillon*, 276 A.2d 36, 40 (Md. 1971) (applying doctrine to pharmaceuticals); *Hunt ex rel. Hunt v. Hoffmann–La Roche, Inc.*, 785 F. Supp. 547 (D. Md. 1992) (same). Under the learned intermediary doctrine, the manufacturer of medical devices need not warn a patient of the risks associated with a product used under the supervision of a doctor. *See Lee v. Baxter Healthcare Corp.*, 721 F. Supp. 89, 94–95 (D. Md. 1989), *aff'd sub nom. Lee v. Baxter Health Care Corp.*, 898 F.2d 146 (4th Cir. 1990)

(unpublished table opinion); *Miller v. Bristol-Myers Squibb Co.*, 121 F. Supp. 2d 831, 838 (D. Md. 2000). Rather, it need only warn the doctor, the learned intermediary, who is in the "best position to understand the patient's needs and assess the risks and benefits of a particular course of treatment." *Lee*, 721 F. Supp. at 95. Federal courts applying Maryland law have extended the learned intermediary doctrine to medical devices. *See, e.g., id.* at 94–95; *Miller*, 121 F. Supp. 2d at 838.

In addition, to be "legally adequate," a warning is required to "explain[] the risk which the plaintiff alleges has caused the injury." *Lee*, 721 F. Supp. at 95. Maryland law does not require the best of all possible warnings, only a reasonable warning. *Nolan v. Dillon*, 276 A.2d 36, 40 (Md. 1971). However, "[e]ven if a label's warnings are inadequate, the doctrine protects a manufacturer from liability provided the doctor has been sufficiently warned from other sources." *Ames v. Apothecon, Inc.*, 431 F. Supp. 2d 566, 572 (D. Md. 2006).

In the context of the learned intermediary doctrine, a learned intermediary relies not only on a manufacturer's warnings, but also on his or her own skill, judgment, and experience in determining whether to use a medical product. Thus, any warning read by the physician "means only that the learned intermediary would have incorporated the additional risk into his decisional calculus." *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 814 (5th Cir. 1992) (internal quotation marks omitted) (distinguishing preventable-risk warnings and unavoidable-risk warnings); *accord Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1003 (4th Cir. 1992); *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1021 (10th Cir. 2001). The plaintiff would still need to show that "the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product." *Thomas*, 949 F.2d at 814; *accord Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1098–99 (5th Cir. 1991); *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 856 (10th Cir. 2003);

*Motus v. Pfizer Inc.*, 196 F. Supp. 2d 984, 997 (C.D. Cal. 2001) *aff'd sub nom. Motus v. Pfizer Inc. (Roerig Div.)*, 358 F.3d 659 (9th Cir. 2004); *Harris v. Purdue Pharma, L.P.*, 218 F.R.D. 590, 596 (S.D. Ohio 2003); *see Brochu v. Ortho Pharm. Corp.*, 642 F.2d 652, 660 (1st Cir. 1981); *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 492–93 (3d Cir. 1985); *Menges v. Depuy Motech, Inc.*, 61 F. Supp. 2d 817, 830 (N.D. Ind. 1999); *Mazur v. Merck & Co.*, 742 F. Supp. 239, 262 (E.D. Pa. 1990).

Here, genuine disputes of material fact exist with regard to (1) whether BSC's warning was adequate, and (2) whether the alleged inadequate warning proximately caused the alleged harm to Ms. Stidham. Therefore, BSC's Motion on the plaintiffs' claim of strict liability for failure to warn is **DENIED**.

### B. Negligence

"The negligence count of a products liability claim comports with longstanding common law tort principles." *Nissen Corp. v. Miller*, 594 A.2d 564, 567 (Md. 1991). The injured party must show "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Doe v. Pharmacia & Upjohn Co.*, 879 A.2d 1088, 1092 (Md. 2005); *accord Dehn v. Edgecombe*, 865 A.2d 603, 611 (Md. 2005); *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 854 A.2d 1232, 1238 (Md. 2004); *Patton v. USA Rugby*, 851 A.2d 566, 570 (Md. 2004).

Here, the plaintiffs' negligence claims fall into the same three categories as their strict liability claims: (1) negligent manufacturing, (2) negligent failure to warn, and (3) negligent design. (*See* Master Long Form Compl. & Jury Demand, MDL No. 2326, ¶¶ 55–59; Short Form Compl. [Docket 1] ¶ 13). BSC has moved for summary judgment on each category.

1. **Manufacturing Defect**

The plaintiffs have presented no evidence that the Uphold and Solyx were negligently manufactured. Thus, they have not met their burden of producing "specific facts showing that there is a genuine [dispute] for trial." *See Celotex*, 477 U.S. at 322–23. Therefore, BSC's Motion on the plaintiffs' claim of negligent manufacturing is **GRANTED**.

2. **Design Defect**

According to BSC, Maryland does not recognize a claim for negligent design. (Reply [Docket 80], at 1 n.1). That is incorrect. *See Volkswagen of Am., Inc. v. Young*, 321 A.2d 737, 745 (Md. 1974) (automobile manufacturer may be liable for design defect based on "traditional rules of negligence"); *see also, e.g.*, *Rock v. Oster Corp.*, 810 F. Supp. 665, 667 (D. Md. 1991) (fondue pot not negligently designed based on risk-utility test); *Nicholson v. Yamaha Motor Co.*, 566 A.2d 135, 145 (Md. Ct. Spec. App. 1989) (motorcycle manufacturers not exempt from "the requirement to use reasonable care in the design of their products").

BSC has presented no other argument on design defect. Thus, BSC has failed to meet its burden under the summary judgment standard of showing the absence of a genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), *superseded on other grounds by Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Therefore, BSC's Motion on the plaintiffs' claim of negligent design is **DENIED**.

3. **Failure to Warn**

Negligence claims based on a failure to warn are nearly identical to strict liability claims based on a failure to warn. *See Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 640 n.7 (Md. 1992) (noting the "overlap of negligence principles in a strict liability failure to warn case").

As explained earlier, genuine disputes of material fact exist with regard to (1) whether BSC's warning was adequate, and (2) whether the alleged inadequate warning proximately caused

the alleged harm to Ms. Stidham. *See supra* Part III.A.3. Therefore, BSC's Motion on the plaintiffs' claim of negligent failure to warn is **DENIED**.

### C. Breach of Express Warranty

Section 2-313(1)(a) of the Maryland Code provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Md. Code Ann., Com. Law § 2-313. To state a claim for breach of express warranty under Maryland law, a plaintiff must allege: (1) a warranty existed; (2) the product did not conform to the warranty; and (3) the breach proximately caused the injury or damage. *Fischbach & Moore Int'l Corp. v. Crane Barge R-14*, 632 F.2d 1123, 1125 (4th Cir. 1980) (citing *Mattos, Inc. v. Hash*, 368 A.2d 993 (Md. 1977)). In addition, the seller does not need to have the specific intention to make a warranty, and "no particular reliance on such statements need be shown." *Rite Aid Corp. v. Levy-Gray*, 894 A.2d 563, 572 (Md. 2006) (quoting Md. Code Ann., Comm. Law § 2-313, cmt. 3). Rather, such assertions of fact are presumed to be part of the agreement, and overcoming this presumption "requires clear affirmative proof." *Id*. Furthermore, privity is not required in a claim of breach of express warranty involving personal injury, so long as it is reasonable to expect that a person would use, consume, or be affected by the product in question. Md. Code Ann., Comm. Law § 2-318.

Here, genuine disputes of material fact exist with regard to whether BSC breached an express warranty. Accordingly, BSC's Motion with regard to the plaintiffs' claim of breach of express warranty is **DENIED**.

### D. Breach of Implied Warranty

Maryland law provides for two types of implied warranties: (1) the implied warranty of merchantability and (2) the implied warranty of fitness for a particular purpose. *See* Md. Code

Ann., Comm. Law §§ 2-314, 2-315. Privity is not required in a claim of breach of implied warranty involving personal injury, so long as it is reasonable to expect that a person would use, consume, or be affected by the product in question. Md. Code Ann., Comm. Law § 2-318.

### 1. Implied Warranty of Merchantability

In Maryland, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Md. Code Ann., Comm. Law § 2-314(1). Importantly, for goods to be merchantable, they must be "fit for the ordinary purposes for which such goods are used." *Id.* § 2-314(2)(c). If the product at the time it leaves the manufacturer is defective, then it is not merchantable. *See Ford Motor Co. v. Gen. Accident Ins. Co.*, 779 A.2d 362, 369–70, 70 n.13 (Md. 2001). A plaintiff must show the existence of a warranty, a breach of that warranty, and that the breach was the proximate cause of the alleged injury. *Mattos v. Hash*, 368 A.2d 993, 997 (Md. 1977).

Here, a reasonable juror could find that the Uphold and Solyx suffer from a defect. Thus, a reasonable juror could find that these products are not merchantable. Therefore, BSC's Motion on the plaintiffs' claim of breach of implied warranty of merchantability is **DENIED**.

### 2. Implied Warranty of Fitness for a Particular Purpose

Maryland law defines the implied warranty of fitness for a particular purpose as follows:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under [section 2-316] an implied warranty that the goods shall be fit for such purpose.

Md. Code Ann., Comm. Law § 2-315. The implied warranty of fitness for a particular purpose is different from the implied warranty of merchantability in that

> [a] "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those

12

> envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.

*Id.* cmt. 2. Therefore, it is essential that a plaintiff allege a particular purpose that is *different* from the ordinary purposes of the Uphold and the Solyx. *See Ford Motor Co. v. Gen. Accident Ins. Co.*, 779 A.2d 362, 378–79 (Md. 2001) (dismissing claim because plaintiff did not point to any particular purpose for which chassis cab was to be used, other than the ordinary purpose of being a vehicle). BSC designed the Uphold to treat POP and the Solyx to treat SUI, which is the reason Ms. Stidham had them implanted in her body. (*See* Mem. in Supp. [Docket 48], at 2).

The plaintiffs have presented no evidence showing a particular purpose of the Uphold and Solyx different from their ordinary purpose. Therefore, BSC's Motion on the plaintiffs' claim of breach of implied warranty of fitness for a particular purpose is **GRANTED**.

### E. Fraudulent Concealment

The plaintiffs concede the issue of fraudulent concealment. (*See* Resp. [Docket 60], at 4). Therefore, to the extent that the plaintiffs intended to bring a separate claim of fraudulent concealment, BSC's Motion regarding that claim is **GRANTED**.[1]

### F. Loss of Consortium

A loss of consortium claim is derivative of the injured spouse's claim for personal injury. *Oaks v. Connors*, 660 A.2d 423, 430 (Md. 1995). At least one of Ms. Stidham's claims survives. Thus, Mr. Stidham's loss of consortium claim also survives. Therefore, BSC's Motion on this issue is **DENIED**.

---

[1] This holding is limited to the independent claim of fraudulent concealment. In the event that future issues arise concerning fraudulent concealment as it relates to the statute of limitations, the court will review such arguments anew.

## IV.  Conclusion

For the reasons discussed above, it is **ORDERED** that BSC's Motion [Docket 48] be **GRANTED IN PART** with respect to the plaintiffs' claims of strict liability for manufacturing defect, negligent manufacturing, breach of implied warranty of fitness for a particular purpose, and fraudulent concealment, and **DENIED IN PART** with respect to the plaintiffs' claims of strict liability for design defect, strict liability for failure to warn, negligent design, negligent failure to warn, breach of express warranty, breach of implied warranty of merchantability, and loss of consortium.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 22, 2015

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE